UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

HENRY L. WOODRUFF,

Petitioner,

v.

MICHAEL O'KEEFE,

Respondent.

---

Civil File No. 00-2478 (JMR/FLN)

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the undersigned United States Magistrate Judge on Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254. The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The Plaintiff appears *pro se*, and the Respondent appears by John Kirwin, Assistant Hennepin County Attorney. For reasons which follow, this Court recommends that the Petition for Writ of Habeas Corpus be dismissed.

## I. BACKGROUND

In June 1996, Petitioner was convicted of Attempted Solicitation of a Child to Engage in Sexual Conduct and began serving his sentence at the Minnesota Correctional Facility at Lino Lakes. (Respondent's Appendix at 18-19 ("R. at 18-19")). On February 13, 1997, Hennepin County filed a petition in Hennepin County District Court to commit Petitioner as a Sexual Psychopathic Personality ("SPP") and a Sexually Dangerous Person ("SDP") pursuant to Minn. Stat. § 253B.02, subds. 18b and 18c (2000).[1] (R. at 1). Following a preliminary hearing, the district court ordered

[1] In 1939, the Minnesota Legislature enacted legislation which provided for the civil commitment of any person proven to be a "psychopathic personality." The statute withstood an immediate constitutional challenge on vagueness and equal protection grounds. See Minnesota ex

FILED MAY 31 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Petitioner held in a secure treatment facility pending trial on the commitment petition. (R. at 19). The trial on the commitment petition was held in April and May 1997. On November 24, 1997, the district court issued its Order for Initial Commitment, concluding that Petitioner met the requirements for commitment under the SPP and SDP laws. (R. at 42). He was committed to the Minnesota Sexual Psychopathic Personality Treatment Center ("MSPPTC"). (Id.).

On January 5, 1998, MSPPTC submitted a treatment report to the trial court so that the court could conduct a review hearing within 90 days of the initial commitment pursuant to Minn. Stat § 253B.18, subd. 2. On January 17, 1998, Petitioner filed an appeal with the Minnesota Court of Appeals raising constitutional, factual and procedural challenges to his initial commitment. (R. at

---

rel. Pearson v. Probate Court of Ramsey County, Minn., 309 U.S. 270, 274 (1939); see also Nicolaison v. Erickson, 65 F.3d 109, 111 (8th Cir. 1995), cert. denied, 516 U.S. 1125 (1996). As it is currently embodied in Minn. Stat. § 253B.02, subd. 18b, the SPP Act defines a "Sexual psychopathic personality" to mean:

> [T]he existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions, which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons.

Id.

In 1994, the Minnesota Legislature conducted a Special Session to amend the Civil Commitment Statute in order to provide for the civil commitment of "sexually dangerous persons." Under the SDP Act, a "sexually dangerous person" is a person who: (1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual personality, or other mental disorder or dysfunction; and (3) as a result is likely to engage in acts of harmful sexual conduct. See Minn Stat. § 253B.02, subd. 18c. Most significantly, and in contrast to the SPP Act, the SDP Act declares that, for purposes of commitment as a SDP, "it is not necessary to prove that the person has an inability to control the person's sexual impulses." Id.

43 & 44). The Minnesota Court of Appeals rejected Petitioner's claims and affirmed his initial commitment on June 30, 1998. (See In re Woodruff, No. C6-98-118, (Minn. Ct. App. June 30, 1998). Petitioner was denied Supreme Court review of his initial commitment on August 13, 1998. (R. at 97).

On November 16, 1998, Petitioner appealed to the trial court to rule his initial commitment invalid on various constitutional grounds. (R. at 100). On December 21, 1998, the trial court held a review hearing pursuant to Minn. Stat. § 253B.18, subd. 2. On March 9, 1999, the trial court rejected Petitioner's claims and ordered that he be committed to MSPPTC for an indeterminate time. (R. at 105).

On April 24, 1999, following his indeterminate commitment, Petitioner filed an appeal with the Minnesota Court of Appeals, again raising constitutional, factual and procedural issues. (R. at 111-12). On September 28, 1999, the Minnesota Court of Appeals rejected Petitioner's claims and affirmed his indeterminate commitment. (See In re Woodruff, No. C2-99-689 (Minn. Ct. App. 1999). (R. at 139). Petitioner was denied Supreme Court review of his indeterminate commitment on November 23, 1999. (R. at 151).

On November 6, 2000, Petitioner filed his current application for federal habeas corpus relief under 28 U.S.C. § 2254. The instant petition lists four grounds for relief: (1) the state violated his federal due process rights by failing to provide certain procedures discussed by the United States Supreme Court's decision in Kansas v. Hendricks, 521 U.S. 346 (1997); (2) the commitment standards in the SPP and SDP laws violate his federal substantive due process rights as identified in Hendricks because his mental health commitment was not sufficiently predicated on any finding that he suffered from a sufficient[ly] recognized volitional mental disorder; (3) his federal

constitutional protections against double jeopardy and cruel and unusual punishment were violated because the SPP law does not provide for certain protections and procedures as outlined in Hendricks and because he was civilly committed following the completion of his sentence; and (4) his federal constitutional rights were violated because he was not provided with the least restrictive alternative placement. (Docket # 1).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus petitions filed by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court pointed out that:

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a conclusion opposite to ours.

Id. at 1519 (emphasis added).

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 1523.

The Court further explained that

> A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 1521-22 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably supported by the evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Accordingly, this Court is not free to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the

state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## III. DISCUSSION

### A. Procedural Due Process Claims

Petitioner contends that his commitment under the SDP and SPP statutes violated his right to procedural due process. The Petitioner's claim is founded upon the Supreme Court's ruling in Hendricks. In Hendricks, a prison inmate, who was committed as a sexually violent predator under the Kansas Sexually Violent Predator Act, claimed that his commitment violated the Due Process, Double Jeopardy, and Ex Post Facto Clauses of the United States Constitution. The Kansas Act provided for the "civil commitment of persons who, due to a 'mental abnormality,' or a 'personality disorder,' are likely to engage in 'predatory acts of sexual violence.'" Hendricks, 521 U.S. at 350 (quoting Kan. Stat. Ann. § 59-29a01 et seq. (1994)). Under the provisions of that Act, if a court determined that "probable cause" existed to support a finding that a person is a "sexually violent predator," that individual would be transferred to a secure facility for professional evaluation. After the evaluation, a jury trial would be held to determine, beyond a reasonable doubt, whether the individual was a Sexually Violent Predator. Id. at 352-53.

Under the Kansas law, an individual who was civilly committed pursuant to the Sexually Violent Predator Act had three different avenues of review. First, the committing court was required to hold yearly reviews to determine whether continued confinement was still warranted. Id. at 353. Second, the Secretary of Social and Rehabilitation Services could, at any time, decide that the confined individual's condition had so changed that release was appropriate. Id. Finally, the individual could petition, at any time, for release and would be released if the court found that the

individual no longer met the initial commitment criteria. Id.

Here, Petitioner contends that the SPP and SDP statutes deprive him of his procedural due process rights because the statutes lack certain procedural safeguards recognized by the United States Supreme Court in Hendricks. Specifically, as pertinent to the Petitioner's claim in this case, the Minnesota SPP and SDP do not provide for: (1) a jury trial; (2) a requirement that the state prove its case beyond a reasonable doubt; (3) periodic judicial review with the burden upon the state to prove that the requisites for commitment are still present; (4) immediate release if a court found that the individual no longer met the initial commitment criteria; and (5) the duration of confinement be linked to the stated purposes of commitment. (Docket #1 at 5).

Petitioner's argument is without merit. As this Court has previously noted:

> Although [the Supreme Court] did note, with approval, that the [Kansas] law provided individuals with a Jury Trial, required the State to prove its case beyond a reasonable doubt, and required automatic, annual review of an individual's continued commitment, no where did the Court mandate every State to adopt such procedures. . . .. It was simply analyzing the statute so as to determine if it was punitive in nature. The Court did not set in stone what procedures would be necessary in order for a civil commitment law, like Minnesota's Sexual Psychopathic Personality Act, to withstand a constitutional challenge. We should not assume, without a more explicit pronouncement, that the Court's decision regarding Kansas's law was meant to set the minimum standard with regard to civil commitment laws, especially when such a pronouncement would affect many State laws.

See Call v. O'Keefe, Civ. No. 98-1532, Report and Recommendation at 16 (D. Minn. Sept. 1, 2000). Accordingly, there is no procedural due process violation simply because the SPP and the SDP statutes do not afford as many rights as the statue discussed in Hendricks.

The Petitioner's procedural due process claim was addressed by the Minnesota Court of Appeals' decision on his direct appeal. Citing Joelson v. O'Keefe, 594 N.W.2d 905 (Minn. Ct. App. 1999), In re Linehan, 594 N.W.2d 867, 868 (Minn. 1999) and In re Blodgett, 510 N.W.2d 910

(Minn. 1994), the Court of Appeals ruled that the Minnesota Supreme Court has upheld the constitutionality of both the SDP and SPP statutes and that the Petitioner's condition meets the standards under those statutes. See Woodruff, C2-99-689 at *6.

The Minnesota Appellate Court's citation to O'Keefe and Linehan clearly demonstrates that the proper legal standard was applied to Petitioner's procedural due process claim.[2] Furthermore, Petitioner has not cited any U.S. Supreme Court decision involving facts that are "materially indistinguishable" from the facts of record here in which a similar claim was upheld. Thus, it cannot be said that the state court decision on Petitioner's claim is "contrary to" established federal law for purposes of § 2254(d)(1). See Pearson v. Probate Court, 309 U.S. 270, 273-75 (1940)(upholding a similar version of the SPP law against a procedural due process challenge).

Petitioner has also failed to show that the state court's decision involves either (i) an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or (ii) an "unreasonable application of clearly established Federal law" to the facts of the case. 28 U.S.C. §§ 2254(d)(1) and (2). The Court of Appeals could not have committed either of those two errors, because the United States Supreme Court has upheld laws similar to Minnesota's SPP and SDP statutes against procedural due process challenges. See Heller v. Doe, 509 U.S. 312 (1993); Allen v. Illinois, 478 U.S. 364 (1986); see also Addington v. Texas, 441 U.S. 418 (1979)(rejecting the argument that the criminal proof standard was constitutionally required for civil commitments and holding that proof by clear and convincing evidence was constitutionally sufficient

---

[2] In re Linehan, 594 N.W.2d 867, 868 (Minn. 1999)(rejecting Petitioner's claims that the SDP is unconstitutional on substantive and procedural due process grounds); Joelson v. O'Keefe, 594 N.W.2d 905 (Minn. Ct. App. 1999)(holding the SPP statute does not require additional procedural safeguards to render it constitutional).

in civil commitments); United States v. Sahhar, 917 F.2d 1197 (9th Cir. 1990)(no constitutional right to jury trial in commitment cases); Call v. Gomez, 535 N.W.2d 312 (Minn. 1995), cert. denied, 519 U.S. 1094 (1997).

Petitioner has offered no basis to support his contention that these procedures are constitutionally required. Petitioner's claim is based on nothing more than conjecture and is contrary to well established case-law. After full review of the facts, this Court finds that the Minnesota Court of Appeals' ruling did not infringe upon a specific constitutional protection or amount to a denial of due process. Therefore, Petitioner cannot be granted habeas corpus relief on his procedural due process claim.

### B. Substantive Due Process Claims

Petitioner argues that the SDP and SPP statutes deprive him of his right to substantive due process because his commitment was not based on a finding of a "sufficient[ly] recognized volitional mental disorder" as required by the Supreme Court in Hendricks. (Docket #1 at 5).

In Hendricks, the prisoner who was civilly committed pursuant to the Kansas Sexually Violent Predator law, argued that substantive due process required the state, in order to civilly commit a person, "to prove by clear and convincing evidence that the person is both (1) mentally ill, and (2) a danger to himself or to others." Hendricks, 521 U.S. at 356. Hendricks argued that "mental abnormality" did not satisfy the "mental illness" requirement. Id. In upholding the Kansas law against the substantive due process challenge, the Court held that the requirement of the Kansas Act for a finding of "future dangerousness," coupled with the existence of a "'mental abnormality' or 'personality disorder,' that makes it difficult, if not impossible, for the person to control his dangerous behavior," adequately protected the inmate's vital substantive due process right to be free from

physical restraint. Id. at 358-60. The Court rejected the contention that due process makes a finding of "mental illness" a prerequisite for civil commitment, and left to state legislators the task of adopting suitable terminology that would comport with due process.

However, Hendricks strongly implies that the required mental disorder prong of a civil commitment statute must incorporate a finding of volitional impairment. The Court explained that proof of some additional factor such as a mental illness, coupled with a showing of dangerousness, limits involuntary civil commitments to those who suffer from a volitional impairment rendering them dangerous beyond their control. Id. at 358. Consequently, the Court upheld the Kansas statute because it set forth criteria relating to an individual's ability to control his dangerousness, and affirmed Hendricks' commitment because his "admitted lack of volitional control, coupled with a prediction of dangerousness, adequately distinguishe[d] Hendricks from other dangerous persons who are more properly dealt with exclusively through criminal proceedings." Id. at 360.

Contrary to Petitioner's contentions, the term "volitional mental disorder" is devoid of any talismanic significance. Here, the state court record is replete with proof of Petitioner's "future dangerousness," coupled with the existence of several mental disorders that make it difficult, if not impossible, for the Petitioner to control his dangerous behavior. For example, the Court of Appeals noted that Petitioner had been diagnosed with paraphilia not otherwise specified, dysthymic disorder, alcohol dependence and anti-social personality disorder -- conditions the psychiatric profession classifies as mental disorders. See In re Woodruff, No. C2-99-689 at *2 (Minn. Ct. App. 1999). Additionally, among several conclusions that supported the Petitioner's commitment, the state court noted that its examiner, Dr. Hoberman, opined that based on Petitioner's prior convictions, he exhibited an utter lack of power to control his sexual impulses and was "'seriously dangerous'

because he had committed a murder and was more likely than not a violent recidivist who will commit sexually dangerous acts." See In re Woodruff, No. C6-98-118 at *3-4 (Minn. Ct. App. 1998). Accordingly, Petitioner's lack of control, coupled with the prediction of his dangerousness satisfied any volitional mental disorder requirement imposed by the Supreme Court in Hendricks.

The Supreme Court has, on a number of occasions, upheld laws that coupled dangerousness with the proof of some additional factor, including the law which preceded Minnesota's SPP statute. See Hendricks, supra at 358 (citing Heller v. Doe, 509 U.S. 312 (1993); Allen v. Illinois, 478 U.S. 364 (1986); Minnesota ex rel. Pearson v. Probate Court of Ramsey Cty., 309 U.S. 270 (1940)); Ayers v. Doth, 58 F. Supp.2d 1028, 1033-35 (D. Minn. 1999). The SPP and SDP are similar to the civil commitment statutes involved in the aforementioned cases: they require a finding of future dangerousness, and then link that finding to the existence of a mental disorder that makes it difficult for the person to control his or her dangerous behavior or likely that the person would engage in acts of harmful sexual conduct. With such a history of validating laws which couple future dangerousness with some additional factor, such as a "mental illness" or "mental abnormality," this Court cannot reject the Supreme Court's pronouncement that such enactments comport with substantive due process. Accordingly, Petitioner cannot be granted habeas corpus relief on his substantive due process claim.

### C. Double Jeopardy and Cruel and Unusual Punishment Claims

#### 1. Cruel and Unusual Punishment

Petitioner argues that his commitment under the SPP violates the federal constitutional prohibition against cruel and unusual punishment because: (1) the statute fails to provide the procedural protections discussed in Hendricks; and (2) he was civilly committed following the

completion of his criminal sentence. (Docket #1 at 6).

It is well established that a federal court may not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. See 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 841 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. See O'Sullivan, 526 U.S. at 841; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Rose v. Lundy, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

To exhaust his state court remedies, a prisoner must fairly present his constitutional claims to the highest available state court before seeking relief in federal court. See O'Sullivan, 526 U.S. at 841; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). Furthermore, a habeas petitioner must exhaust his state court remedies with respect to all of the claims that he wishes to raise in a federal habeas corpus petition. A "mixed petition" -- i.e., one that includes both exhausted and unexhausted claims -- will be dismissed for non-exhaustion. See Rose, 455 U.S. at 522.

In this case, the Respondent correctly notes that Petitioner's claims involving the prohibition against cruel and unusual punishment were never adjudicated in any state court. This Court's review of the state court record reveals that Petitioner never presented said claims in any state court. See Woodruff, C2-99-689. Accordingly, this Court recommends that said claims be dismissed without prejudice because Petitioner has not satisfied the exhaustion requirement.

2. Double Jeopardy

The Petitioner contends that the SPP is punitive and criminal in nature and violates the Double Jeopardy Clause because: (1) the procedural protections which led the Court in Hendricks to find that the Kansas Act was not punitive in nature are absent from the SPP; and (2) he was committed following the completion of his prison term. The Court will recommend that Petitioner's double jeopardy claims be dismissed with prejudice for the reasons discussed below.[3]

The inmate in Hendricks argued that the Kansas Law violated the Double Jeopardy Clause of the United States Constitution. In order to determine whether the Double Jeopardy Clause applied to the Kansas Law, the Court first had to determine whether the law created a criminal or a civil proceeding, as the Double Jeopardy Clause applies only to criminal proceedings. Hendricks, 521 U.S. at 361. In upholding the Kansas Act against the Double Jeopardy Clause challenge, the Court noted a number of attributes of that law which made it civil in nature. Id. at 362-369. For example, the Court noted that: (1) an individual committed under that law was automatically entitled to have his or her case reviewed at least once a year by a Court; (2) the individual would be released if a Court found that he or she no longer met the initial commitment criteria,; and (3) the duration of confinement under the Act was "linked to the stated purposes of commitment, namely, to hold the person until his mental abnormality no longer cause[d] him to be a threat to others." Id. at 363-64. Additionally, the Court noted that the law provided the individual with a number of procedural safeguards, such as a jury trial and a requirement that the State prove its case beyond a reasonable

---

[3] Although it is arguable as to whether the Petitioner's mixed petition should be dismissed for non-exhaustion under 28 U.S.C. § 2254, the instant petition can still be properly adjudicated without exhaustion, pursuant to 28 U.S.C. § 2254(b)(2). That statute allows the Court to reject the Petitioner's claims regardless of whether the claims were fully adjudicated in state court.

doubt. Id. at 364. Thus, the Court found the Double Jeopardy Clause inapplicable. Id. at 369-71.

As noted earlier, although the Supreme Court commended the Kansas legislature for providing the above stated procedural protections, there was no mandate that every state adopt such procedures. As this Court has previously noted, the Supreme Court was "simply analyzing the statute so as to determine if it was punitive in nature . . . and did not set in stone what procedures would be necessary in order for a civil commitment law, like [the SPP], to withstand a constitutional challenge." See Call v. O'Keefe, Civ. No. 98-1532, Report and Recommendation at 16 (D. Minn. Sept. 1, 2000).

This Court will not assume, without a more explicit pronouncement, that the Hendricks decision meant to establish the minimum standards for civil commitment laws. There is no double jeopardy violation simply because the SPP statute does not afford as many rights as the statue discussed in Hendricks. In fact, like the Kansas statute, the SPP is civil in nature and not subject to the Double Jeopardy Clause. The fact that Petitioner's civil commitment occurred after the completion of his prison term does not show that the SPP is punitive or criminal in nature. See Hendricks at 369 (noting that Hendricks' commitment does not violate the Double Jeopardy Clause even though that confinement "may follow a prison term."). Accordingly, Petitioner's commitment under the SPP does not violate the Double Jeopardy Clause, even though it follows a prison term.

**D. Release to Least Restrictive Alternative**

Finally, Petitioner posits that his right to release to the least restrictive alternative was violated because he was "denied intensive supervised release and community placement." (Docket # 1 at 6).

The Petitioner's claim was addressed by the Minnesota Court of Appeals' decision on his

direct appeal. Citing In re Senty-Haugen, 583 N.W.2d 266, 269 (Minn. 1998), the Court of Appeals correctly ruled that there is no statutory requirement that a person committed as an SPP or an SDP be committed to the least restrictive treatment alternative. See Woodruff, C2-99-689 at *5. Additionally, the Court of Appeals noted that expert testimony concerning treatment alternatives confirmed that Petitioner's placement at the MSPPTC was the least restrictive placement that could meet his treatment needs and provide sufficient protection to the public. Id.

The state court's citation to In re Senty-Haugen clearly demonstrates that the proper legal standard was applied to Petitioner's claim. Furthermore, Petitioner has not cited any U.S. Supreme Court decision involving facts that are "materially indistinguishable" from the facts of record here, in which a similar claim was upheld. Thus, it cannot be said that the state court decision on Petitioner's claim is "contrary to" established federal law for purposes of § 2254(d)(1). See Younberg v. Romeo, 457 U.S. 307, 102 (1982)(noting that civilly committed persons have a constitutional right to minimally adequate care and treatment, safety and freedom from bodily restraint); United States v. Watson, 893 F.2d 970, 982 (8th Cir. 1990), vacated as moot, 900 F.2d 1322 (8th Cir. 1990).

Petitioner has also failed to show that the state court's decision in his case involves either (i) an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or (ii) an "unreasonable application of clearly established Federal law" to the facts of the case. 28 U.S.C. §§ 2254(d)(1) and (2). The Minnesota Court of Appeals could not have committed either of those two errors, because the two court examiners addressed the least restrictive alternative issue and testified that there was no alternative placement less restrictive than the treatment facility. (R. at 32 & 38). Accordingly, Petitioner failed to present any contrary facts for

that court to consider and his claim is fundamentally flawed because he has offered no evidence to support it.

Because Petitioner provided only conclusory assertions to the state courts, unsupported by any specific relevant evidence, those courts could not have made any unreasonable factual determinations pertaining to Petitioner's claim. For the same reason, the state courts could not have made an objectively unreasonable application of the relevant law to the facts of the case, or committed an error of constitutional magnitude. Therefore, Petitioner cannot be granted habeas corpus relief on his claim pursuant to either the "unreasonable determination of the facts" clause in § 2254(d)(2), or the "unreasonable application of clearly established Federal law" clause in § 2254(d)(1).

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Insofar as the Petitioner's third ground for habeas relief is based on claims of cruel and unusual punishment, those claims be **DISMISSED WITHOUT PREJUDICE**;

2. The remainder of Petitioner's application for a writ of habeas corpus, (Docket No. 1), be **DISMISSED WITH PREJUDICE**;

DATED: May 30, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions

to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.